**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3918
_____

LENELLE GRAY,
Appellant

v.

UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. Civil Action No. 10-cv-01772)
District Judge:  Honorable Yvette Kane
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 1, 2012

Before:  JORDAN, HARDIMAN and ALDISERT, Circuit Judges

(Opinion filed: June 26, 2012)
_____

OPINION
_____

PER CURIAM

Lenelle Gray, a federal prisoner proceeding pro se, appeals an order of the United

States District Court for the Middle District of Pennsylvania granting the Government's

motion for summary judgment in his action under the Federal Tort Claims Act, 28 U.S.C.

§ 1346(b) ("FTCA").  For the reasons that follow, we will affirm in part and vacate in part the judgment of the District Court.

Gray alleged in his complaint that he and his cellmate, Andrew Bennett, were confined in the Special Management Unit ("SMU") at USP-Lewisburg.  Gray and Bennett notified a correctional officer on the morning of Friday, August 14, 2009, that they were not getting along, that they needed to be separated, and that Bennett was going to harm Gray.  Later in the day, Gray and Bennett notified a second officer, Officer Blue, that they were having problems and that they would like to be separated before Bennett harmed Gray.  Officer Blue told Gray that the Lieutenant had stated that he would have to wait until Monday, when the Unit Team came back.

Gray further alleged that later that night, while distributing razors for shaving, Officer Blue offered Gray a razor.  When Gray replied that he would like a razor, Bennett struck Gray in the face with a razor and continued to attack him until correctional officers controlled him.  Gray averred that he needed more than seventy stitches.  Gray claimed that the correctional officers were negligent in failing to separate him from Bennett and that Officer Blue was negligent in failing to collect a razor that Bennett had obtained on a date prior to the attack.

The Government filed a motion for summary judgment asserting that Gray's claims are barred by the discretionary function exception to the waiver of sovereign immunity under the FTCA.  A Magistrate Judge recommended granting the Government's motion on Gray's failure-to-protect claim but denying the motion as to

2

Gray's claim against Officer Blue. The Government objected to the Magistrate Judge's report and the District Court ruled that the discretionary function exception bars both of Gray's claims. The District Court granted the Government's motion for summary judgment in full and this appeal followed.[1]

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our standard of review over the applicability of the discretionary function exception is plenary. S.R.P. v. United States, 676 F.3d 329, 332 (3d Cir. 2012).

As recognized by the District Court, the United States has sovereign immunity from suit, except where immunity is waived. F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). The FTCA waives sovereign immunity for claims related to injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1). This waiver, however, does not apply to claims based upon the performance of, or failure to perform, a discretionary function. Id. § 2680(a). We have explained that the discretionary function exception does not apply every time there is a choice between courses of action, but it immunizes from second-guessing decisions grounded in social, economic, and political policy. S.R.P., 676 F.3d at 332.

We recently set forth in S.R.P. the test for determining whether the discretionary function exception immunizes the government from suit. As a preliminary matter, a

---

[1] Gray pursues his claim against Officer Blue on appeal. He does not pursue his claim that correctional officers failed to separate him from Bennett. We will affirm that portion

court must identify the conduct at issue. Id. A court then determines whether the act giving rise to the alleged injury involved "an element of judgment or choice." Id. at 333 (citations omitted). If a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the discretionary function exception does not apply because the employee had no choice but to follow the directive. Id. (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)). Where a course of action is not prescribed, a court must then consider whether the action at issue "is of the kind that the discretionary function exception was designed to shield." Id. (citations omitted). As noted above, only actions and decisions based on public policy considerations are protected under the discretionary function exception. Id. It is presumed that an agent's acts are grounded in policy when exercising discretion, but this presumption can be rebutted. Id. at 336.

The conduct at issue in this case concerns Officer Blue's collection of razors in the SMU. Gray claims that Officer Blue was negligent in failing to retrieve the razor that Bennett used to attack him. The Magistrate Judge concluded that the discretionary function exception does not apply because Gray had pointed to a mandatory policy in the SMU Inmate Handbook requiring that razors be accounted for and disposed of at the end of a shower. The District Court, however, agreed with the Government that the SMU Inmate Handbook does not create a policy that removes the element of judgment or

of the District Court's decision for that reason.

4

choice from correctional officers in carrying out their duties to provide for the safekeeping of inmates, but merely acts as a guide to inmates at the institution.

The record reflects that the Federal Bureau of Prisons issued Program Statement 5217.01, which provides that each institution with a SMU will develop an Institution Supplement that addresses local operations and procedures. Exhibits in Support of Motion for Summary Judgment ("Exhibits") at Ex. 2, Attach. A at 11. Pursuant to this Program Statement, an Institution Supplement was issued to implement local procedures for operating the SMU at USP-Lewisburg. Exhibits at Ex. 2, Attach. B at para. 1. The Institution Supplement provides that razors will be controlled by staff and that specific rules outlining procedures for showers are addressed in the SMU Handbook. Exhibits, Ex. 2, Attach. B. at para. 5(f), 5(g), App. A.

The SMU Inmate Handbook states that showers will be for ten minutes and that, if an inmate wishes to shave, he will be issued a razor while showering. Exhibits at Ex. 1. Attach. D at 3. The SMU Inmate Handbook further provides that "[a]ll razors will be accounted for and disposed of at the end of the shower." Exhibits at Ex.1, Attach. D at 3. The SMU Inmate Handbook, dated December 19, 2002, was the only document addressing showering procedures at the time of the assault. Decl. of M. Romano, Exhibits at Ex. 1, para. 5.

Reading these policies together, we do not agree with the District Court that the SMU Inmate Handbook "merely acts as a guide to inmates at the institution." Dist. Ct. Dec. at 6. The District Court relied on language in the Handbook providing that the

5

guide is written to present a general overview of the SMU, that it is not intended to be a complete guide to all of the rules that will govern inmate behavior, and that it is intended to assist inmates in adjusting to their new institution. Exhibits at Ex. 1, Attach. D at 1. The Handbook may serve these purposes, but the District Court did not address in its decision the fact that the Institution Supplement, which sets forth local procedures for operating the SMU, incorporates the Handbook as to certain procedures, including showering. The Government also does not discuss in its brief the Institution Supplement's incorporation of the Handbook. Although the Institution Supplement is dated August 31, 2009, two weeks after the attack on Gray, the Government has not shown that the Handbook did not prescribe staff conduct.

We also disagree with the District Court's conclusion that the language in the Handbook does not affect the discretion given to prison staff as to how to carry out their duties. As noted above, the Handbook states that "[a]ll razors will be accounted for and disposed of at the end of the shower." Exhibits at Ex.1, Attach. D at 3 (emphasis added). As recognized by the Magistrate Judge, Gray has pointed to a mandatory policy requiring that razors be accounted for and disposed of at the end of a shower. Gray claims that Officer Blue violated this policy by not retrieving Bennett's razor. Because a "policy specifically prescribes a course of action for [prison staff] to follow," the task of collecting razors does not involve an element of judgment or choice and the discretionary function exception is inapplicable. S.R.P., 676 F.3d at 333.

6

This case is distinguishable from S.R.P., where we held that the discretionary function exception barred a claim that the National Park Service failed to warn of a danger posed by barracudas to shallow water swimmers. S.R.P., 676 F.3d at 330. We explained that the policies at issue did not specifically dictate the way in which park officials should balance the preservation of park scenery and natural resources and public safety. Id. at 335. The policies in S.R.P., however, provided that the Park Service would reduce hazards with appropriate measures "[w]hen practicable." Id. The policies further provided that decisions about whether to give certain warnings was left to the discretion of decision-makers at the park level. Id. In contrast, the applicable policy here does not afford similar discretion but provides that razors will be collected at the end of a shower.

The Government has not shown that Gray's claim against Officer Blue involved discretionary conduct and is thus barred by the discretionary function exception to the waiver of sovereign immunity. Accordingly, we will vacate in part the judgment of the District Court and in all other respects we will affirm.